UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TODD MITCHELL MCCLAIN,<br><br>         Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>         Defendant. | No. CV-10-255-JPH<br><br>ORDER GRANTING PLAINTIFF'S<br>MOTION FOR SUMMARY JUDGMENT<br>AND REMANDING FOR ADDITIONAL<br>PROCEEDINGS PURSUANT TO 42<br>U.S.C. § 405(g) |

BEFORE THE COURT are cross-Motions for Summary Judgment (ECF Nos. 14, 16) Attorney Donald C. Bell represents Plaintiff; Special Assistant United States Attorney Leisa A. Wolf represents Defendant. The parties have consented to proceed before a magistrate judge. (ECF No. 6.) After reviewing the administrative record and briefs filed by the parties, **IT IS ORDERED** Plaintiff's Motion for Summary Judgment is **GRANTED**, and the matter is reversed and remanded to the Commissioner for additional proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**JURISDICTION**

Plaintiff Todd Mitchell McClain (Plaintiff) protectively filed for supplemental social security income (SSI) on January 27, 2006. (Tr. 32) Plaintiff alleged an onset date of July 4, 1986. (Tr. 94.) Benefits were denied initially on October 11, 2006, and on reconsideration. (Tr. 33, 32.) Plaintiff requested a hearing before an administrative law judge (ALJ), that was ultimately held before ALJ

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 1

R.S. Chester on October 2, 2008. (Tr. 478-514.) Plaintiff was represented by counsel and testified at the hearing. (Tr. 480-507.) Also testifying at the hearing was vocational expert Dan McKinney. (Tr. 507-13.) ALJ Chester denied benefits. (Tr. 19-29.) The Appeals Council denied review. (Tr. 3-5.) The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcripts and record and will, therefore, only be summarized here. At the time of the hearing, Plaintiff was 43 years old. (Tr. 33.) Plaintiff has a seventh grade education, but earned his GED while in prison. (Tr. 489.) He has no permanent residence, and often is homeless. (Tr. 491.)

Plaintiff was incarcerated for 12 years for manslaughter. Plaintiff's limited work history includes feeding and cleaning the pens of the prison tracking dogs, working in a kitchen performing basic food preparation, and as a dishwasher. (Tr. 498-508.)

Plaintiff experiences occasional problems with his blood pressure, he has back problems, but his most significant problems are from depression and post traumatic stress syndrome that he says he experiences due to being repeatedly molested as a child by his father. (Tr. 493; 505; 148-55.)

## STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error.

*Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or non-disability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**SEQUENTIAL PROCESS**

The Social Security Act (the Act) defines disability as the "inability to engage in any substantial gainful activity by reason of

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 3

any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c (a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if his impairments are of such severity that Plaintiff is not only unable to do his previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components., 253 F.3d at 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he or she is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404, Subpt. P, App.

1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past. If plaintiff is able to perform his or her previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity (RFC) assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual functional capacity and age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

### ALJ'S FINDINGS

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since

January 27, 2006, the application date. (Tr. 21.) At step two, he found Plaintiff has the following severe impairments: lumbar back pain, depression, posttraumatic stress syndrome and hypertension. (Tr. 21.) At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 21.) The ALJ then determined:

> [C]laimant has the residual functional capacity to perform medium work. The claimant can occasionally lift less than 50 pounds and frequently lift and carry up to 25 pounds. The claimant can stand or walk up to six hours out of an eight-hour workday, with intermittent sitting. He can occasionally crouch or crawl. He can have superficial contact with the general public and non-collaborative contact with coworkers.

(Tr. 22.) At step four, the ALJ found Plaintiff is capable of performing past relevant work as a kitchen helper/dishwasher, dog groomer, and cook's helper. (Tr. 28.) Thus, the ALJ concluded Plaintiff has not been under a disability as defined in the Social Security Act since January 27, 2006, the date the application was filed. (Tr. 28.)

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Specifically, Plaintiff argues: (1) the ALJ improperly rejected the opinions of Plaintiff's examining providers Epichelle Gonzales, MD, Heith Barkley, MS, MHP, and James Goodwin, Ph.D.; (2) the ALJ improperly gave little weight to Plaintiff's testimony; and (3) the ALJ failed to conduct a proper step four analysis. (ECF No. 15 at 15-19.)

**DISCUSSION**

**1. Opinion Evidence**

Plaintiff argues that the ALJ failed to provide adequate reasons for rejecting the opinions of Plaintiff's examining[1] providers James Goodwin, Ph.D., Heith Barkley, M.S., MHP, and Epichelle Gonzales, M.D. (ECF No. 15 at 16.)

In evaluating medical or psychological evidence, a treating or examining physician's opinion is entitled to more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir.2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews,* 53 F.3d at 1043.

   **a.   James D. Goodwin, Ph.D.**

ALJ Chester gave little weight to the evaluation by James D. Goodwin, Ph.D., conducted in October, 2004 for two reasons: (1) Plaintiff had been off his medications for several months during the

---

[1]Plaintiff characterizes Epichelle Gonzales, M.D. and Heith Barkley, M.S., MHP, as "treating providers." (ECF No. 15 at 16) A treating physician's opinion is given special weight because of familiarity with the claimant and the claimant's physical condition. *Fair v. Bowen*, 885 F.2d 597, 604-05 (9th Cir.1989). But a review of the record fails to reveal any additional records from Dr. Gonzales or Mr. Barkley, and therefore they are considered examining providers.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 7

period of the examination, and Plaintiff admitted he improves when he is on medication; and (2) a more recent examination in 2007 showed "significant improvement in the claimant's mental status...." (Tr. 27.)

As ALJ Chester noted, Dr. Goodwin assessed Plaintiff with multiple severe impairments, but at the time, Plaintiff had not been taking his medications. When Plaintiff was asked if his medications for anxiety and depression helped, Plaintiff responded, "[t]o a degree they help." (Tr. 506.) In January, 2004, Plaintiff reported to his case manager that since he had been working, depression was not an issue for him. (Tr. 300.) Impairments that can be controlled effectively with medication are not disabling. *Warre v. Commissioner of Social Security*, 439 F.3d 1001 (2006). The ALJ properly relied upon this factor in weighing Dr. Goodwin's assessment.

The second reason ALJ Chester gave for according little weight to Dr. Goodwin's 2004 assessment was that a 2007 medical examination indicated "significant" improvement in Plaintiff's mental status. (Tr. 27.) In April, 2007, Plaintiff was admitted to Eastern State Hospital via a 90-day RCW 71.05.230 involuntary commitment because he was "gravely disabled" and presented a likelihood of serious harm to himself. (Tr. 391-92; 394.) Upon admission, Plaintiff was examined by I.A. Santos, MD, a psychiatrist. (Tr. 411.) Dr. Santos concluded that Plaintiff suffers from major depression, recurrent with suicidal attempt and possible posttraumatic stress disorder. (Tr. 412.) Seven days later, Plaintiff was described as "slowly improving, mood less depressed." (Tr. 405.)

Roughly four months later, Plaintiff was discharged from Eastern Hospital to a diversion bed. (Tr. 403.) His discharge summary was

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 8

completed by Jaime Y. Basnillo, M.D., a psychiatrist. (Tr. 409.) Dr. Basnillo noted that upon discharge, Plaintiff did not exhibit acute emotional or physical distress and he denied suicidal ideation. (Tr. 407.) Dr. Basnillo diagnosed Plaintiff with Dysthmia, possible post-traumatic stress disorder, alcohol abuse and mixed substance abuse. He also found that Plaintiff had moderate-to-severe chronic mental illness and substance use. (Tr. 408.) Dr. Basnillo indicated that Plaintiff's prognosis was "guarded due to his substance use, particularly alcohol in self-medicating his psychological symptoms and his tendency to become violent." (Tr. 409.) Dr. Basnillo also noted that Plaintiff was ambivalent and refused psychotherapy during his hospitalization. (Tr. 409.) Thus, the records from Eastern State Hospital support the ALJ's reasons for giving little weight to Dr. Goodwin's assessment.

The ALJ's specific reasons for rejecting the opinion of Dr. Goodwin – Plaintiff's impairments improve when he is medicated and when he receives treatment – are specific, legitimate reasons supported by the substantial evidence in the record.

**b.   Heath Barkley, M.S., MHP**

The ALJ also gave little weight to the December 2008 evaluation by Heath Barkley, M.S., MHP that was conducted in jail following an alcohol-related incident. (Tr. 27.)  Mr. Barkley assessed Plaintiff with marked impairments in suicidal trends, social withdrawal, physical complaints and global illness. (Tr. 434.) Mr. Barkley diagnosed major depressive disorder, severe, recurrent and post-traumatic stress syndrome. (Tr. 434.) Plaintiff displayed marked impairments in the ability to: (1) relate appropriately to co-workers and supervisors; (2) interact appropriately in public contacts; and

(3) control physical or motor movements and maintain appropriate behavior. (Tr. 435.)

The ALJ acknowledged that Plaintiff's results from the mental mini-exam were below the threshold for impairment, but opined this result was likely due to Plaintiff's recent consumption of alcohol:

> [i]t is possible the claimant's cognitive abilities were diminished as a result of his recent substance abuse and that his cognitive abilities would return to normal once he stopped abusing alcohol for a longer period of time.

(Tr. 27.)

This conclusion is contradicted by the record. The clinical findings indicate that none of the diagnosed conditions were likely caused by alcohol, nor were the cognitive limitations likely to dissipate withسixty days of sobriety. (Tr. 434-35.)

The Commissioner argues that Mr. Barkley's opinion was entitled to less weight because he as not an acceptable medical source under the regulations. (ECF. NO. 17 at 9.) In addition to "acceptable medical sources,[2]" an ALJ may consider evidence from "public and private welfare agency personnel," when assessing the severity of a claimant's impairments and the resulting effect on the claimant's ability to work. 20 C.F.R. § 404.1513(d)(3). However, an ALJ may disregard opinion evidence provided by "other sources," if the ALJ gives reasons germane to each witness for doing so. *Turner v. Commissioner of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir.2010). In this case, ALJ Chester's reasons for disregarding Mr. Barkley's "other source" assessments were unsupported by the record, and thus the

---

[2] "Sources who can provide evidence to establish an impairment." 20 C.F.R. § 404.1513(a)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 10

failure to accord sufficient weight to Mr. Barkley's evaluation as an "other source" was error.

**c.   Epichelle Gonzales, M.D.**

Plaintiff complains the ALJ did not address the December 2004 opinion from Epichelle Gonzales, M.D., of the Chelan-Douglas Behavioral Health Clinic. Dr. Gonzales diagnosed Plaintiff with posttraumatic stress disorder, major depressive disorder – recurrent, and polysubstance abuse. (Tr. 232.) Dr. Gonzales's report indicated that Plaintiff had been off his medications for approximately six months, because he could not afford to pay for them. Plaintiff was seeking a new prescription and told Dr. Gonzales that when he was taking Prozac, his depression was "not as intense." (Tr. 230.)

The ALJ need not discuss all evidence presented, but must explain why significant probative evidence has been rejected. *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). In this case, it is not clear that Dr. Gonzales' single exam was significant and probative. To the extent that Dr. Gonzales' exam indicates that Plaintiff's condition deteriorates when he is not medicated, the report is merely cumulative and thus is not "significant probative evidence" requiring an explicit discussion by the ALJ. *Vincent*, 739 F.2d 1393. The ALJ's failure to specifically address Dr. Gonzales' opinion evidence was not error.

**2.   Credibility of Plaintiff**

Plaintiff also argues that the ALJ improperly gave little weight to Plaintiff's testimony, and that the ALJ erred by concluding that Plaintiff's daily activities contradict a finding that he is disabled. (ECF No. 15 at 17.)

The ALJ is responsible for determining credibility, resolving

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 11

conflicts in medical testimony, and for resolving ambiguities. *Andrews,* 53 F.3d at 1039. However, the ALJ's findings must be supported by specific, cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir.1990). Once the claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony regarding the severity of symptoms merely because it is not supported by objective medical evidence. *Bunnell v. Sullivan,* 947 F.2d 341, 343 (9th Cir.1991) (en banc).

Unless affirmative evidence exists establishing that the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.3d at 834 (internal quotation marks omitted); *Swenson v. Sullivan,* 876 F.2d 683. 687 (9th Cir.1989). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala,* 12 F.3d 915, 918 (9th Cir.1993). Questions of credibility are solely within the control of the ALJ. See *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir.1982).

In this case, the ALJ provided two reasons for discrediting the Plaintiff: (1) Plaintiff "was not completely forthright about his past legal problems;" and (2) Plaintiff's daily activities did not support his claims of disabling symptoms. (Tr. 25-26.)

First, it is not clear from the ALJ's ruling when Plaintiff was not "completely forthright." During the hearing, Plaintiff was asked discrete, closed questions about certain crimes, and he answered those fully. At no time during the hearing is Plaintiff asked whether he has revealed each and every one of his convictions. Instead, Plaintiff simply answered questions as he was asked. For example, when asked by

his attorney and later the ALJ, Plaintiff answered questions about manslaughter, burglary, and possession of stolen property. (See Tr. 490; 496-97; 499-500.)

The ALJ relies upon the omission of two convictions – assault and passing bad checks – to establish Plaintiff's lack of forthrightness. Yet the record reveals Plaintiff is forthcoming about his more serious conviction for manslaughter and his resulting lengthy incarceration. ALJ Chester's reliance upon Plaintiff's failure to disclose two felony convictions is not a clear and convincing reason to discount Plaintiff's credibility.

The ALJ also found that Plaintiff's reported daily activities indicated an ability to work and undercut the credibility of his claims to the contrary. Plaintiff's reported activities included preparing a meal (eating cold foods in a grocery store), building a campfire to stay warm, and, when in transitional housing, answering the phone and taking out the trash. (Tr. 26.)

It is difficult to equate these minimal subsistence activities with the activity level necessary to sustain a job in the workplace. A plaintiff's daily activities impact his or her credibility only when the level of activity is inconsistent with the claimed limitations. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir.1998)("disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."); *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir.1987)(disability claimants are not required to "vegetate in a dark room" in order to be eligible for benefits). *See also Fair* 885 F.2d at 603 ("Many home activities are not easily transferable to ... the more grueling environment of the workplace...").

In this case, the minimal activities cited by ALJ Chester are

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 13

consistent with Plaintiff's claimed limitations resulting from his impairments. The reasons provided by the ALJ in discrediting Plaintiff's testimony fall short of "clear and convincing," and thus the ALJ's credibility determination regarding Plaintiff was erroneous.

**3.   Performance of past work**

Plaintiff argues that the ALJ failed to properly assess his RFC to perform the requirements of his past relevant work as generally and actually required. Plaintiff also argues that the hypothetical failed to include both his mental and physical impairments. (ECF No. 15 at 19)

At step four, plaintiff has the burden of showing that he could not perform his past relevant work as actually performed or as generally performed. *Pinto v. Massanari*, 249 F.3d 840, 844-45 (9th Cir.2001). However, the ALJ still has a duty "to make the requisite factual findings to support his conclusion." *Id.* at 844. He must make specific findings as to the claimant's RFC, the physical and mental demands of the past relevant work, and the relation of the RFC to the past work. *Id.* (citing SSR 82-62). To determine the general demands of the claimant's past relevant work, the ALJ may refer to the Dictionary of Occupational Titles ("DOT"). *Id.* at 845-46 (citing *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir.1995)).

"The decision as to whether the [plaintiff] retains the functional capacity to perform past work ... has far-reaching implication and must be developed and explained fully in the disability decision." SSR 82-62. An ALJ must obtain adequate documentation of past work to support the decision as to the plaintiff's ability to return to past work:

Adequate documentation of past work includes factual

>information about those work demands which have a bearing on the medical established limitations. Detailed information about strength, endurance, manipulative ability, mental demands and other job requirements must be obtained as appropriate.

*Id.*

At step four, the ALJ was required to make three distinct findings of fact related to: (1) the plaintiff's RFC, (2) the physical and mental demands of plaintiff's past jobs; and (3) the plaintiff's RFC would permit a return to past jobs. SSR 82-62. In this case, the ALJ failed to do so. Instead, the ALJ simply recited Plaintiff's past occupations with the respective skill and exertional levels. (Tr. 28.) Next, the ALJ summarily concluded that given Plaintiff's RFC, he "is able to perform the work as it is typically performed." (Tr. 28.)

Where an ALJ provides very few findings and relies largely on the conclusions of a vocational expert, the court has difficulty reviewing the ALJ's decision. *Pinto*, 249 F.3d at 847. "Requiring the ALJ to make specific findings on the record at each phase of the step four analysis provides for meaningful judicial review. When ... the ALJ makes findings only about the claimant's limitations, and the remainder of the step four assessment takes place in the [vocational expert's] head, we are left with nothing to review." *Pinto,* 249 F.3d at 847, quoting, *Winfrey v. Chater*, 92 F.3d 1017, 1025 (10th Cir.1996).

In the absence of accurate[3], explicit findings about the physical

---

[3]For example, Plaintiff testified that while in prison, he fed and washed the tracking dogs, checked them for ticks, kept the pens clean, and mowed the grass in the pens. (Tr. 498.) The ALJ concluded that this constituted a dog groomer position. (Tr. 508; Tr. 28.) But the DOT dog groomer definition is significantly more skilled than

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 15

and mental demands of Plaintiff's past jobs, the step four assessment was deficient. As a result, substantial evidence does not support the ALJ's decision that Plaintiff could perform his past relevant jobs as actually performed. Where unresolved issues exist and the record does not clearly require a finding of disability, the court should remand for further administrative proceedings to remedy defects in the original administrative proceedings. *See Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir.2001). Because issues remain with respect to the medical evidence in this record, Plaintiff's residual functional capacity and his ability to perform his past jobs, this matter should be remanded to conduct further administrative proceedings.

Nor is the ALJ's step four determination clearly supported by substantial evidence, given the errors in evaluating the medical evidence, in evaluating Plaintiff's credibility and in assessing plaintiff's residual functional capacity and in making the necessary findings regarding the requirements of Plaintiff's previous jobs.

**CONCLUSION**

The ALJ's decision is based on legal error. On remand, the ALJ is directed to provide "clear and convincing" credibility findings, re-evaluate the medical evidence in its entirety and obtain a new

---

the prison duties described by Plaintiff, including "study[ing] proportions of dog to determine most appropriate cutting pattern to achieve desired style." See DICOT 418.674-010. Simply washing and checking a dog for ticks is quite different from performing a clipping pattern to shape its coat. The ALJ's finding that Plaintiff's past work as a "dog groomer" was not supported by the evidence.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 16

psychological evaluation that includes an assessment of Plaintiff's nonexertional mental limitations. The ALJ is further directed to make new step-four findings in light of the new RFC, and if necessary, proceed to step five.

Accordingly,

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment **(EFC No. 14)** is **GRANTED**;

2. The case is **REVERSED AND REMANDED** to the Commissioner for additional proceedings pursuant to sentence four of 42 U.S.C. § 405(g) and consistent with this Order;

3. Defendant's Motion for Summary Judgment **(EFC No. 16)** is **DENIED.**

4. Application for attorney fees may be made by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for **Plaintiff**, and the file shall be **CLOSED**.

DATED July 18, 2011.

                    S/JAMES P. HUTTON
              UNITED STATES MAGISTRATE JUDGE